RENE L. VALLADARES
Federal Public Defender
Nevada State Bar No. 11479
BENJAMIN F. J. NEMEC
JOANNE L. DIAMOND
Assistant Federal Public Defenders
411 E. Bonneville Ave., Ste. 250
Las Vegas, NV 89101
(702) 388-6577
Ben_Nemec@fd.org
Joanne_Diamond@fd.org

Attorney for Matthew Wade Beasley

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| United States of America, | Case No. 2:23-cr-00066-JAD-DJA |
|---|---|
| Plaintiff, | **Reply in Support of Motion to Suppress Statements Under the Fifth Amendment (ECF No. 54)[1]** |
| v. | |
| Matthew Wade Beasley, | **(Evidentiary Hearing Requested)** |
| Defendant. | |

The FBI shot Matthew Beasley in his home. After making that mistake, they made two more. First, they encouraged Mr. Beasley to talk to them about what happened with the alleged Ponzi scheme without providing *Miranda* rights. Second, they talked to Mr. Beasley while he was still under the physical and psychological coercion of getting shot. His statements should be suppressed.

---

[1] This reply is timely. *See* ECF No. 66.

1

**Memorandum of Points and Authorities**

2
**I.    Undisputed Facts**

3
*The agents shot Mr. Beasley in his home.* Mr. Beasley explained "[i]t is

4
undisputed . . . that within minutes of entering Mr. Beasley's home, the agents

5
shot him twice."[2] The government agrees.[3]

6
**II.    Disputed Facts**

7
*Mr. Beasley appeared to turn his gun toward the agents.* Mr. Beasley noted

8
the government originally accused him of turning the gun toward the agents in a

9
sweeping motion before dismissing criminal charges based on that accusation.[4]

10
The government, although with equivocating language, continues to allege Mr.

11
"Beasley appeared to turn his gun towards" the agents.[5] This is disputed.

12
*Mr. Beasley "refused to surrender."* The government's description of what

13
happened after the agents shot Mr. Beasley does him a disservice. They claim

14
that Mr. Beasley "refused to surrender."[6] Mr. Beasley disputes this description or

15
even that it was a standoff in the traditional sense.

16
*Mr. Beasley's statements.* The government states Mr. "Beasley voluntarily

17
and without being asked, made incriminating statements, admitting that he ran

18
a Ponzi scheme."[7] Law enforcement encouraged Mr. Beasley to continue to talk as

19
he lay bleeding.[8]

20

21

22
[2] ECF No. 54 at 4:17–18.

23
[3] ECF No. 66 at 3:13–4:2.

24
[4] ECF No. 54 at 3:25–4:5.

[5] ECF No. 66 at 3:20–4:1.

25
[6] ECF No. 66 at 4:3–4.

26
[7] ECF No. 66 at 4:5–7.

[8] ECF No. 54 at 22:22–23:14.

2

*The hospital encounter.* Unlike the statements Mr. Beasley made after he was shot at his house, the interrogation at the hospital is unrecorded. Thus, testimony is needed to determine what happened at the hospital. Regardless, Mr. Beasley disputed the government's sparse description of the hospital interrogation.[9]

## III. Undisputed Arguments

### A. The government bears the burden to demonstrate custody.

Mr. Beasley explained the government held the burden to demonstrate whether he was in custody.[10] The government did not respond. "The failure of an opposing party to include points and authorities in response to any motion constitutes a consent to granting the motion." LCR 47–3. "By failing to respond to this argument, then, the United States has consented to it." *United States v. Martinez*, Case No. 2:22-cr-00135-GMN-NJK, 2024 WL 4093310 at *5 (D. Nev. July 17, 2024). Therefore, it is undisputed the government has the burden to demonstrate custody.

### B. Mr. Beasley was in custody in the hospital.

The government agrees Mr. Beasley was in custody when interrogated in the hospital.[11]

---

[9] ECF No. 66 at 4:8–11; ECF No. 54-5.

[10] ECF No. 54 at 15:8–20.

[11] ECF No. 66 at 11:8.

3

**IV.    Disputed Arguments**

**A.    The government was required to administer *Miranda* warnings before speaking with Mr. Beasley after law enforcement shot him.**

*Miranda v. Arizona*, 384 U.S. 436 (1966), "forbid[s] a prosecutor from using statements stemming from custodial interrogation of the defendant unless [he] demonstrates the use of procedural safeguards such as the familiar *Miranda* warnings: that the accused has the right to remain silent, to consult with an attorney, and to have his counsel present with him during questioning." *Hernandez v. Holland,* 750 F.3d 843, 852 (9th Cir. 2014) (cleaned up).

**1.    Mr. Beasley was in custody.**

**a.    Mr. Beasley was formally arrested.[12]**

"To determine whether an individual was in custody, a court must, after examining all of the circumstances surrounding the interrogation, decide whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *United States v. Cazares*, 788 F.3d 956, 980 (9th Cir. 2015) (cleaned up). Seizure can occur with use of force with intent to restrain or a show of authority with acquisition of control. *Torres v. Madrid*, 592 U.S. 306 (2021). "The application of physical force to the body of a person with intent to restrain is a seizure, even if the force does not succeed in subduing the person." *Id.* at 309 *see also Cal. v. Hodari D.*, 499 U.S. 621 (1991) (the application of force gives rise to an arrest).

---

[12] The government argues, "[i]nexplicably, Beasley argues that under a theory of transferred intent he was in custody during the standoff." ECF No. 66 at 6:17–20. What's inexplicable is how the government concluded that Mr. Beasley argued that. Mr. Beasley briefly mentioned law enforcement could transfer intent to demonstrate that the intent to seize is interpreted broadly. ECF No. 54 at 17:13–20.

The government makes two arguments to avoid this clear caselaw. First, it argues the agents shot Mr. Beasley in self-defense. Second, it argues that Mr. Beasley was only in custody "for the instant that the bullets struck him." Neither avail.

*Whether the agents shot Mr. Beasley in self-defense is inapposite.* Mr. Beasley, as an initial note, disputes the agents' claim that he pointed the gun at them. But putting that aside, even if the agents shot him in self-defense, it wouldn't matter. If the agents shot him in self-defense, the agents shot him with the intent to restrain since they shot him to restrain him from enacting harm. The government notably cites no cases where self-defense is a recognized exception. Indeed, the example provided by the Supreme Court is far afield from what happened here: "A tap on the shoulder to get one's attention will rarely exhibit such an intent." *Torres*, 592 U.S. at 307. Shooting Mr. Beasley is far more than a tap on the shoulder, and manifested objective intent to restrain.

*Mr. Beasley's seizure continued past the moment of force.* The government argues Mr. Beasley's seizure only lasted for the moment the bullet hit him.[13] The government does so based on what appears to be an uncited quote from *Torres*. But what the government misses is that the suspect in *Torres* continued to drive for 75 miles once shot. *Id.* at 310. Mr. Beasley, conversely, laid in a pool of his own blood for four hours. As noted by *Torres*, "a seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement." *Id.* at 322. The shots achieved both. Mr. Beasley stopped moving, both because the police showed their authority by shooting him and because he couldn't move after being shot.

---

[13] ECF No. 66 at 6:10–16.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

        **b.    This Court should decline to abandon binding precedent in favor of out of circuit decisions.**

Mr. Beasley dutifully analyzed the nine factors promulgated by *Kim* and *Craighead* to argue that even if he wasn't formally arrested, his restraint on movement shared the characteristics of a formal arrest.[14] The government takes the novel approach of telling this Court to ignore binding precedent and instead follow a Third Circuit case.[15] It does so on the basis that the Ninth Circuit caselaw only applies "to situations where law enforcement interrogates a suspect in face-to-face settings, or otherwise exercises control over them."[16] Putting aside that the agents exercised control over Mr. Beasley when they shot him twice, the government provides no caselaw suggesting *Kim* and *Craighead* only apply to face-to-face settings. The much more straightforward, and rational, approach would be to simply apply the facts of the situation to the *Kim* and *Craighead* factors, which Mr. Beasley did.

There are other problems with the nonbinding cases. First, none of the cases involve a defendant being shot. That goes to whether Mr. Beasley was truly in control of the situation. Second, the Ninth Circuit case, *United States v. Campbell*, 85 F.3d 638 (9th Cir. 1996), discussed in a footnote and which has no precedential or persuasive value, predates *Kim* and *Craighead.*

This Court should follow the binding precedent and apply the *Kim* and *Craighead* factors.

---

[14] ECF No. 54 at 19:1–22:21.

[15] ECF No. 66 at 7:10–11:5.

[16] ECF No. 66 at 7:15–16.

**B.    Mr. Beasley was interrogated.**

The government claims "[t]he negotiator never said or did anything to cause [Mr.] Beasley to confess other than to be present and listen, and to ask questions as requested by [Mr.] Beasley or to mitigate the situation." But as the government notes, the standard is whether the police said or took actions "that the police know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980). Because Mr. Beasley made clear he wanted to talk from the outset, the negotiator should have known further conversations would result in incriminating statements.

For the hospital interrogation, Mr. Beasley disputes the government's recitation. This dispute will need to be resolved at an evidentiary hearing.

**C.    Mr. Beasley's statements were not voluntary.**

**1.    The government misinterprets the standard.**

The government tries to convince this Court to circumvent binding precedent once again by suggesting "[t]he test for impermissible violence considers whether the confession was accompanied by physical violence, that is, whether the violence is connected to the confession."[17] The government then goes on to imply a but for analysis,[18] concluding with "[n]o wonder the Court has applied the intent to extract a confession requirement."[19]

The government cannot avoid binding Ninth Circuit precedent. "A confession accompanied by physical coercion is *per se* involuntary." *Stanton Rd. Assocs. v. Lohrey Enters.*, 984 F.2d 1015, 1030 (9th Cir. 1993); *United States v.*

---

[17] ECF No. 66 at 12:16–18.
[18] ECF No. 66 at 12:19–13:5.
[19] ECF No. 66 at 13:23–24.

*Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). The government does not support its claim of an intent requirement with caselaw because there is no support for it.

### 2. Self-defense is not a recognized exception for the voluntariness standard.

The government states that the agents shot Mr. Beasley in self-defense which acts as an exception to the violence rule.[20] That is not an exception, and there is no support for it.

### 3. An evidentiary hearing is needed to determine the totality of the circumstances.

Mr. Beasley went through the immense psychological pressure he endured when he gave his supposed confession.[21] The disputes surrounding it are factual, and an evidentiary hearing is required to untangle the psychological coercion.

## V. Conclusion

Mr. Beasley requests this Court suppress his statements to the FBI.

DATED: April 7, 2025.

RENE L. VALLADARES
Federal Public Defender

By: */s/ Benjamin F. J. Nemec*
    BENJAMIN F. J. NEMEC
    JOANNE L. DIAMOND
    Assistant Federal Public Defender
    Attorneys for Matthew Wade Beasley

---

[20] ECF No. 66 at 13:16-17.
[21] ECF No. 54 at 24:3–18.