SUE FAHAMI
Executive Assistant United States Attorney
Nevada Bar Number 5634
DANIEL R. SCHIESS
Assistant United States Attorney
Nevada Bar No. 5483
JESSICA M. OLIVA
Assistant United States Attorney
501 Las Vegas Blvd. South, Ste. 1100
Las Vegas, Nevada 89101
Phone: 702-388-6336
Email: dan.schiess@usdoj.gov
Email: jessica.oliva@usdoj.gov

*Attorneys for the United States of America*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MATTHEW WADE BEASLEY,<br><br>Defendant. | Case No. 2:23-cr-66-JAD-DJA<br><br>**Plea Agreement for Defendant Matthew Wade Beasley Pursuant to Fed. R. Crim. P. 11(c)(1)(A) and (B)** |

This plea agreement between Matthew Wade Beasley ("defendant") and the United States Attorney's Office for the District of Nevada (the "USAO") sets forth the parties' agreement regarding the criminal charges referenced herein and the applicable sentences, fines, and restitution in the above-captioned case. This agreement binds only defendant and the USAO and does not bind the district court, the U.S. Probation Office, or any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities. This agreement does not prohibit the USAO or any agency or third party from seeking any other civil or administrative remedies, including administrative forfeiture or

1  civil forfeiture *in rem* actions, directly or indirectly against defendant or defendant's

2  property.

3      This agreement becomes effective upon signature by defendant, defendant's counsel,

4  and an Assistant United States Attorney.

## I.    DEFENDANT'S OBLIGATIONS

6  1.    Defendant agrees to:

7      a.    At the earliest opportunity requested by the USAO and provided by

8  the Court, appear and plead guilty to counts one through five of the Indictment, each

9  charging him with wire fraud in violation of 18 U.S.C. § 1343.

10      b.    Stipulate to the facts agreed to in this agreement;

11      c.    Abide by all agreements regarding sentencing contained in this

12  agreement;

13      d.    Not seek to withdraw defendant's guilty pleas once they are entered;

14      e.    Not request release or seek to modify the existing pre-trial order of

15  detention;

16      f.    Appear for all court appearances;

17      g.    Not commit any federal, state, or local crime;

18      h.    Be truthful at all times with the U.S. Probation and Pretrial Services

19  Offices and the Court;

20      i.    Before and after sentencing, upon request by the Court, the USAO, or

21  the Probation Office, provide accurate and complete financial information, submit sworn

22  statements, and/or give depositions under oath concerning defendant's assets and

23  defendant's ability to pay. As part of the required disclosure, defendant agrees to provide all

24  financial information and authorizations requested by the Probation Office for preparation

of the Presentence Report. Defendant further agrees that, upon filing of this agreement, the USAO is authorized to obtain defendant's credit report. Defendant will also complete a financial form provided by the USAO, to include all supporting documentation, and return it to the USAO within three (3) weeks from entry of the plea. Defendant agrees that the district court may enter any order necessary to effectuate or facilitate disclosure of defendant's financial information;

j.    To facilitate payment of any fine, restitution, or assessment, surrender assets, defendant agrees to voluntarily release funds and property under defendant's control or in which defendant has any property interest, before and after sentencing, to pay any fine or restitution identified in this agreement, agreed to by the parties, or ordered by the Court.

k.    To facilitate restitution, defendant agrees that restitution shall be ordered due and payable in full immediately after the judgment is entered, and that the full amount of any restitution ordered is subject to immediate enforcement and collection by the USAO or defendant's victims, or both. Defendant agrees that any schedule of payments entered by the district court is a schedule of the minimum payment due and does not prohibit or limit the methods by which the USAO may immediately enforce and collect the judgment in full. Defendant acknowledges that restitution may not be discharged, in whole or in part, in any present or future bankruptcy proceeding.

## II.    THE USAO'S OBLIGATIONS

2.    The USAO agrees to:

a.    Stipulate to facts agreed to in this agreement;

b.    Abide by all agreements regarding sentencing contained in this agreement;

c.     At sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable sentencing guidelines offense level, pursuant to USSG § 3E1.1, and move for an additional one-level reduction if available under that section;

d.     At sentencing, not bring any additional charges against defendant arising out of the factual basis set forth in this agreement. However, the USAO reserves the right to prosecute defendant for (a) any crime of violence as defined by 18 U.S.C. § 16, except as provided in subparagraph 2.e below; and (b) any criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371). Defendant agrees that the district court at sentencing may consider any uncharged conduct in determining the applicable sentencing guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the sentencing guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

### III.     ELEMENTS OF THE OFFENSES

3.     The elements of wire fraud in violation of 18 U.S.C. § 1343 are as follows:

**First**, the defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

**Second**, the statements made as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

**Third**, the defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

**Fourth**, the defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

Adapted from Model Crim. Jury Instr. 9th Cir. 15.35 (Approved 6/2021).

## IV. CONSEQUENCES OF CONVICTION

4. **Maximum and Minimum Statutory Penalties**:

a. Defendant understands that the statutory maximum sentence the district court can impose for a violation of 18 U.S.C. § 1343 is not more than 20 years, a three-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

b. Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 100 years imprisonment; a three-year period of supervised release; a fine of $1,250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $500.

5. **Parole Abolished**: Defendant acknowledges that defendant's prison sentence cannot be shortened by early release on parole because parole has been abolished.

6. **Supervised Release**: Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offenses that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

7. **Factors under 18 U.S.C. § 3553**: Defendant understands that the district court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining defendant's

sentence. However, the statutory maximum sentence and any statutory minimum sentence limit the district court's discretion in determining defendant's sentence.

8. **Potential Collateral Consequences of Conviction**: Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the district court accepts defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

9. **Potential Removal/Deportation Consequences of Conviction**: Defendant understands that, if defendant is not a United States citizen, the felony conviction in this case may subject defendant to removal, also known as deportation, which may, under some circumstances, be mandatory; denial of citizenship; and denial of admission to the United States in the future. The district court cannot advise defendant fully regarding the immigration consequences of the felony conviction in this case, but defendant's attorney has advised him about the deportation risks of his guilty plea. Defendant understands that unexpected immigration consequences will not serve as grounds to withdraw defendant's guilty pleas.

## V.    FACTUAL BASIS

10. Defendant admits that defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant acknowledges that if defendant elected to

go to trial instead of pleading guilty, the USAO could prove defendant's guilt beyond a reasonable doubt. Defendant further acknowledges that defendant's admissions and declarations of fact set forth below satisfy every element of the charged offense. Defendant waives any potential future claim that the facts defendant admitted below are insufficient to satisfy the elements of the charged offense. Defendant admits and declares under penalty of perjury that the facts set forth below are true and correct:

11.    Defendant admits only those facts relative to his culpability for the charged offenses.

12.    At all relevant times, the defendant was an attorney licensed to practice law in the state of Nevada.

13.    From in or about 2016 to in or about March 2022, defendant, acting with the intent to defraud, operated a massive Ponzi scheme involving investments purportedly in litigation settlement funding contracts. In short, the defendant knowingly caused investors to believe that their investments would be used to fund loans to personal injury plaintiffs ("Plaintiffs") waiting to receive settlements from their claims against insurance companies, when the defendant knew all along that he would not use investor money to fund loans but to enrich himself and others, and to repay investors as if loans had been made.

14.    The defendant carried out the scheme by conducting or causing to be conducted the following acts, among others:

a.    Defendant represented to Individual-1 that he could find personal injury plaintiffs ("plaintiffs") who wanted to borrow money against their insurance settlement agreements and that they would be willing to pay rates of interest for the loans. The defendant and Individual-1 agreed that Individual-1 would use his company to loan money to plaintiffs, and that Individual-1 would borrow money from investors to fund the

loans. They further agreed that Individual-1's company would send investor money to defendant's IOLA account, a trust account maintained by the defendant for his law practice, for disbursement to plaintiffs. They also agreed that when the loans matured, plaintiffs would send their loan payoffs to the defendant who, after withholding his fees, would send the balance to Individual-1's company for repayment to investors and to pay Individual-1.

       b.    The defendant created loan agreements between Individual-1's company and the plaintiffs. Under these agreements, plaintiffs agreed to borrow $80,000 or $100,000 for 90-day periods and to repay the loans with 25% interest plus a $5,000 loan processing fee.

       c.    The defendant also created investment agreements between Individual-1's company and investors. Under these agreements, investors agreed to loan money to Individual-1's company for 90-day periods in return for receiving half of the interest paid by plaintiffs. When the 90-day investment periods ended, some plaintiffs chose to roll their investments into new investment contracts while other plaintiffs chose to withdraw their investments.

       d.    As the number of investors grew, Individual-1 recruited a few investors ("promoters") to help him promote and manage new investors. The promoters explained the investment plan to new investors, frequently directed them to send their investments directly to defendant's IOLTA account, and disbursed purported loan payoffs to investors.

       e.    The defendant knowingly caused Individual-1 and Promoters to make material misrepresentations to new investors, including but not limited to the following:

           i.    The defendant had access to personal injury plaintiffs who wanted to borrow money against their insurance settlements and were willing to pay high interest rates for the loans;

ii.     Investor money be used by Individual-1's company to fund loans to plaintiffs, and plaintiffs would sign loan contracts between themselves and Individual-1's company;

iii.    Investments were available in $80,000 and $100,000 increments for 90-day periods;

iv.     At the end of 90-day periods, plaintiffs would send their repayments to the defendant, who would send most of the repayments to Individual-1's company, or sometimes to Promoters, who each in turn would repay investors;

v.      The repayments came from loan pay off made by Plaintiffs; and

vi.     The investments carried no practical risk of loss because no Plaintiff had defaulted on a loan or been late repaying their loan.

f.      In reality, the defendant never found or intended to find plaintiffs who wanted to borrow money against their insurance settlements. Rather, the defendant intended to use investor money to enrich himself and Individual-1, to pay off earlier investors with new investor money, and for other purposes. When the 90-day contracts matured, the defendant sent new investor money to Individual-1 (and his associates as discussed below) to repay earlier investors and to enrich Individual-1.

15.     From 2017 to March 2022, defendant caused approximately 1213 investors to invest approximately $519.9 million in Individual-1's company. More than $461 million of the $519.9 million was transferred directly to the defendant's IOLTA account, while other amounts were transferred to the defendant through other accounts or in cash. Approximately $331.4 million of the $461 million was returned to investors, causing some investors to profit from their investments, some to break even, and others to lose money. In total, 948 investors lost a total of nearly $246.4 million. Defendant paid himself about $33.5

million from the scheme. He used about $10.7 million of the $33.5 million to pay off his gambling debts and $22.8 million to enrich himself and to continue gambling. He purchased luxury homes, high-end cars, recreational vehicles, among other things.

16.    As a result of the scheme 25 or more investors suffered substantial financial hardships, including but not limited to: (1) substantial loss of a retirement, education, or other savings or investment funds; (2) substantial changes to their employment, such as postponing their retirement plans; and (3) substantial changes to their living arrangements, such as relocating to a less expensive home.

17.    In execution of the scheme, defendant caused thousands of wire communications to be sent in interstate commerce. On or about the dates set forth below, in execution of the scheme, defendant caused the following wire communications to be sent in interstate commerce.

| COUNT | DATE | DESCRIPTION |
|---|---|---|
| 1 | 6/17/2019 | Investor-1 wire transferred $160,000 from a bank account in Utah to Beasley Law Group IOLTA account in Nevada |
| 2 | 2/1/2021 | Investor-2 wire transferred $100,000 from a bank account in Arizona to Beasley Law Group IOLTA account in Nevada |
| 3 | 3/1/2021 | Investor-3 wire transferred $100,00 from a bank account in Arizona to Beasley Law Group IOLTA account in Nevada |
| 4 | 8/17/2021 | An FBI Undercover Agent wire transferred $100,000 from a bank account in New York to Beasley Law Group IOLTA account in Nevada |
| 5 | 8/30/2021 | Investor-4 wire transferred $200,000 from a bank account in California to Beasley Law Group IOLTA account in Nevada |

# VI.    SENTENCING FACTORS

18.    **Discretionary Nature of Sentencing Guidelines**: Defendant understands that in determining Defendant's sentence, the district court is required to calculate the applicable sentencing guidelines range and to consider that range, possible departures under the sentencing guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the sentencing guidelines are advisory only, that Defendant cannot have any expectation of receiving a sentence within the calculated sentencing guidelines range, and that after considering the sentencing guidelines and the other § 3553(a) factors, the district court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

19.    **Offense Level Calculations**: The parties jointly agree and stipulate that, in calculating defendant's advisory guidelines sentencing range, the Court should use the following base offense level and adjustments; acknowledge that these stipulations do not bind the district court; and agree that they will not seek to apply or advocate for the use of any other base offense level or any other specific offense characteristics, enhancements, or reductions in calculating the advisory guidelines range:

**Counts One Through Five, Wire Fraud, 18 U.S.C. § 1343**

| Offense Level Calculation | | USSG |
|---|---|---|
| Base Offense | 7 | § 2B1.1(a)(1) |
| Monetary Loss Adjustment (more than $150 million but less than $250 million) | +26 | § 2B1.1(b)(1)(N) |
| Substantial Hardship Adjustment (25 or more victims) | +6 | § 2B1.1(b)(2)(C) |
| Sophisticated Means Adjustment | +2 | § 2B1.1(b)(10)(C) |
| Abuse of Position of Trust | +2 | § 3B1.3 |
| **Adjusted Offense Level** | **43** | |

20.    **Reduction for Acceptance of Responsibility**: Under USSG § 3E1.1(a), the USAO will recommend that defendant receive a two-level downward adjustment for acceptance of responsibility unless defendant (a) fails to truthfully admit facts establishing a factual basis for the guilty plea when defendant enters the plea; (b) fails to truthfully admit facts establishing the amount of restitution owed when defendant enters the guilty plea; (c) fails to truthfully admit facts establishing the forfeiture allegations when defendant enters the guilty plea; (d) provides false or misleading information to the USAO, the Court, Pretrial Services, or the Probation Office; (e) denies involvement in the offense or provides conflicting statements regarding defendant's involvement or falsely denies or frivolously contests conduct relevant to the offenses; (f) attempts to withdraw defendant's guilty plea; (g) commits or attempts to commit any crime; (h) fails to appear in court; or (i) violates the conditions of pretrial release.

21.    Under USSG § 3E1.1(b), if the district court determines that defendant's total offense level before operation of § 3E1.1(a) is 16 or higher, and if the USAO recommends a two-level downward adjustment pursuant to the preceding paragraph, the USAO will move for an additional one-level downward adjustment for acceptance of responsibility before sentencing because defendant communicated defendant's decision to plead guilty in a timely manner that enabled the USAO to avoid preparing for trial and to efficiently allocate its resources.

22.    **Criminal History Category**. Defendant acknowledges that the district court may base defendant's sentence in part on defendant's criminal record or criminal history. The district court will determine defendant's criminal history category under the sentencing guidelines.

23.    **Additional Sentencing Information**: The stipulated sentencing guidelines calculations are based on information now known to the parties. Defendant understands that both defendant and the USAO are free to (a) supplement the facts in this agreement by supplying relevant information to the U.S. Probation and Pretrial Services Offices and the district court regarding the nature, scope, and extent of defendant's criminal conduct and any aggravating or mitigating facts or circumstances; and (b) correct any and all factual misstatements relating to the district court's sentencing guidelines calculations and determination of sentence. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the U.S. Probation and Pretrial Services Offices and the district court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement. Good faith efforts to provide truthful information or to correct factual misstatements shall not be grounds for defendant to withdraw defendant's guilty pleas.

Defendant acknowledges that the U.S. Probation Office may calculate the sentencing guidelines differently and may rely on additional information it obtains through its investigation. Defendant also acknowledges that the district court may rely on this and other additional information as it calculates the sentencing guidelines range and makes other sentencing determinations, and the district court's reliance on such information shall not be grounds for defendant to withdraw defendant's guilty plea.

## VII.    POSITIONS REGARDING SENTENCING

24.    The USAO will recommend that the defendant be sentenced to a term of not more than 20 years imprisonment and may oppose the defendant's request for a downward variance under § 3553(a).

25.    The defendant reserves the right to argue for a downward variance under § 3553(a), but even making that argument, he agrees not to argue for a sentence of less than 12 years imprisonment.

26.    Defendant acknowledges that the district court does not have to follow the recommendation of either party.

27.    Notwithstanding its agreement to recommend a sentence as described above, the USAO reserves its right to defend any lawfully imposed sentence on appeal or in any post-conviction litigation.

28.    If defendant commits any of the acts or omissions listed in Paragraph 19 above, then: (a) the USAO is entitled to argue for any sentence it deems appropriate under 18 U.S.C. § 3553(a); (b) the USAO may request that the district court, in calculating the advisory guidelines range, apply specific offense characteristics and enhancements not included in the stipulated offense level calculation in Paragraph 15; and (c) defendant remains bound by the provisions of this agreement and shall not have the right to withdraw defendant's guilty pleas.

29.    Restitution: Defendant understands that he will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offenses to which defendant is pleading guilty and in amounts greater than those alleged in the counts to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in USSG § 1B1.3, in connection with the offenses to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant

14

to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those charges. The parties have not determined the approximate of restitution.

### IX.    WAIVER OF CONSTITUTIONAL RIGHTS

30.    Defendant understands that by pleading guilty, defendant gives up the following rights:

a.    The right to persist in a plea of not guilty;

b.    The right to a speedy and public trial by jury;

c.    The right to be represented by counsel—and, if necessary, have the court appoint counsel—at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel—and, if necessary, have the court appoint counsel—at every other stage of the proceeding;

d.    The right to be presumed innocent and to have the burden of proof placed on the USAO to prove defendant guilty beyond a reasonable doubt;

e.    The right to confront and cross-examine witnesses against defendant;

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify;

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant; and

h.    The right to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and any other pretrial motions that have been filed or could be filed.

## X.    WAIVER OF APPELLATE RIGHTS

31.    **Waiver of Appellate Rights**. Defendant knowingly and expressly waives: (a) the right to appeal any sentence imposed within or below the applicable Sentencing Guideline range as determined by the district court; (b) the right to appeal the manner in which the district court determined that sentence on the grounds set forth in 18 U.S.C. § 3742; and (c) the right to appeal any other aspect of the conviction, including but not limited to the constitutionality of the statutes of conviction; any other aspect of the sentence; and any order of restitution or forfeiture.

32.    Defendant reserves only the right to appeal any portion of the sentence that is an upward departure or variance from the applicable Sentencing Guideline range as determined by the district court.

33.    **Waiver of Post-Conviction Rights**. Defendant also knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to defendant's conviction, sentence, and the procedure by which the district court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel.

34.    **Preservation of Evidence**: Defendant acknowledges that the USAO and the agencies investigating this case are not obligated or required to preserve any evidence obtained in the investigation of this case.

## XI.    RESULT OF WITHDRAWAL OF GUILTY PLEA OR VACATUR/REVERSAL/SET-ASIDE OF CONVICTION

35.    **Consequence of withdrawal of guilty plea**: Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that

16

entry into this agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

36.    **Consequence of vacatur, reversal, or set-aside**: Defendant agrees that if defendant's conviction is vacated, reversed, or set aside, both the USAO and defendant will be released from all their obligations under this agreement, except that, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## XII.    BREACH OF AGREEMENT

37.    Defendant agrees that if, at any time after this agreement becomes effective, defendant knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached,

and the district court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will remain bound by the provisions of this agreement and will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

38.    Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.    Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.    Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.    Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Federal Rule of Evidence 410, Federal Rule of Criminal Procedure 11(f), or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## XIII.  COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

39.     Defendant understands that the Court and the U.S. Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

40.     Defendant understands that both defendant and the USAO are free to argue on appeal and collateral review that the district court's sentencing guidelines calculations and the sentence it chooses to impose are not error.

41.     Defendant understands that even if the district court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to by the parties, or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one—not the prosecutor, defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## XIV.  ADDITIONAL ACKNOWLEDGMENTS

42.     The Defendant acknowledges that:

a.      Defendant read this agreement and defendant understands its terms and conditions.

b.      Defendant had adequate time to discuss this case, the evidence, and this agreement with defendant's attorney.

c.      Defendant carefully and thoroughly discussed all terms of this agreement with defendant's attorney.

d.     Defendant understands the terms of this agreement and voluntarily agrees to those terms.

e.     Defendant has discussed with defendant's attorney the following: the evidence; defendant's rights; possible pretrial motions that might be filed; possible defenses that might be asserted either prior to or at trial; the sentencing factors set forth in 18 U.S.C. 3553(a); the relevant sentencing guidelines provisions; and consequences of entering into this agreement.

f.     The representations contained in this agreement are true and correct, including the factual basis for defendant's offense set forth in this agreement.

g.     Defendant was not under the influence of any alcohol, drug, or medicine that would impair defendant's ability to understand the agreement when defendant considered signing this agreement and when defendant signed it.

43.     Defendant understands that defendant alone decides whether to plead guilty or go to trial and acknowledges that defendant has decided to enter defendant's guilty plea knowing of the charges brought against defendant, defendant's possible defenses, and the benefits and possible detriments of proceeding to trial.

44.     Defendant understands that no promises, understandings, or agreements other than those set forth in this agreement have been made or implied by defendant, defendant's attorney, or the USAO, and no additional promises, agreements, or conditions shall have any force or effect unless set forth in writing and signed by all parties or confirmed on the record before the district court.

45.     Defendant acknowledges that defendant decided to plead guilty voluntarily and that no one threatened, coerced, or forced defendant to enter into this agreement.

46.     Defendant is satisfied with the representation of defendant's attorney, and defendant is pleading guilty because defendant is guilty of the charges and chooses to take advantage of the promises set forth in this agreement and for no other reason.

### XV. PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

47.     The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE DISTRICT OF NEVADA

SUE FAHAMI
Executive Assistant United States Attorney

/s/ Daniel R. Schiess                                10/17/2025
_____          _____
DANIEL R. SCHIESS                                     Date
JESSICA M. OLIVA
Assistant United States Attorneys

/s/ Matthew Wade Beasley                          10/16/2025
_____          _____
MATTHEW WADE BEASLEY                     Date
Defendant

/s/ Joanne L. Diamond                               10/16/2025
_____          _____
JOANNE DIAMOND                                   Date
KATE BERRY
Attorneys for Defendant BEASLEY